# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Missouri Department of Social Services ) ASBCA No. 59191
)
Under Contract No. W911S7-09-D-0029 )

APPEARANCE FOR THE APPELLANT: Keith L. Baker, Esq.
Baker, Cronogue, Tolle & Werfel, LLP
McLean, VA

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
MAJ Travis P. Sommer, JA
CPT Harry M. Parent III, JA
Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

### INTRODUCTION

On 6 July 2016, we severed this appeal, for purposes of decision, from ASBCA No. 58944, with which it was consolidated for hearing, and stayed that appeal pending a decision in this one. Only the issue of entitlement is before the Board (tr. 1/7). Appellant seeks an equitable adjustment of contract prices, or, in the alternative, a "termination settlement," following the government's partial termination for convenience of a requirements contract.[1]

---

[1] Although the conclusion of appellant's 3 June 2015 post-hearing briefing states that it is entitled to termination costs and an adjustment of contract prices, its briefing elsewhere indicates that it seeks those forms of relief only in the alternative (app. br. at 1, 15, 26). In addition, on 5 July 2016, appellant sent a letter to the Board, referring at page 3 to its "alternative claim for a termination settlement." We find that appellant seeks termination costs and an adjustment of contract prices only in the alternative, consistent with the approach in its claim to the contracting officer (R4, tab 76 at 5).

# FINDINGS OF FACT

1. On 25 September 2009, the Mission and Installation Contracting Command-Fort Leonard Wood (government) awarded the contract referenced above to appellant, Missouri Department of Social Services, for the provision of food service operations at 18 dining facilities at Fort Leonard Wood, Missouri (R4, tab 1 at 1).[2] The contract was for a base year, with three option years, for services at 18 facilities, designated in the contract as DFACs 630, 653, 657, 735, 739, 754, 820, 821, 836, 930, 1010, 1011, 1740, 2105, 3223, 1268, 1231, and 5073 (id. at 3-11, 13, 23, 33). On 25 September 2009, the government issued Delivery Order No. 1, for services during the base year; that is, 26 September 2009 through 31 August 2010 (R4, tab 5). The government subsequently issued contract modifications that exercised the three option years; that is, through 31 August 2013 (R4, tabs 17, 26, 66). Appellant contracted with EDP Services, Inc. (EDP), pursuant to the Randolph-Sheppard Act, to submit a proposal for the contract and to perform the food services required under the contract (tr. 1/77-78).

2. In developing its proposed pricing for the contract, EDP relied on Technical Exhibits (TE-2s) supplied by the government for each dining facility (DFAC). The TE-2s specified for each DFAC information such as the operating schedule, serving hours, seating capacity, number of diners to be served per meal, and other relevant information that EDP relied on in coming up with a price (tr. 1/42-43; app. supp. R4, tab 5 at 19-22 (representative example)). Based on that information, EDP built estimates of total costs per contract year to provide the required services at all 18 DFACs. Each of these total cost estimates contained both variable and fixed costs and profit at a rate of 3 percent. For instance, EDP estimated, for Option Year 2, total cost and profit of $30,457,068.71.[3] (App. supp. R4, tab 3 at 6). Variable costs within this amount consisted primarily of "production labor" (cooks, attendants, cashiers, etc.) that could be expected to vary in direct proportion to the volume of business in a DFAC (tr. 1/32-34; app. supp. R4, tab 3 at 5-6). Fixed costs included the salaries of the overall project manager, building managers, maintenance workers, and van operators; costs of the job site office at Fort Leonard Wood; and costs associated with the home office, which were unlikely to vary with volume of business (tr. 1/34-36; app. supp. R4, tab 3 at 5-6).

3. The total number of "production hours" estimated by EDP for each year of the contract, including Option Year 2, for all 18 DFACs was 1,279,423 (tr. 1/37; app. supp. R4, tab 3 at 5). To price the services to be provided at each DFAC, EDP calculated a "retail rate" by taking the total estimated cost and profit for the year (minus direct costs that do not bear overhead or profit) and dividing it by the total number of estimated

---

[2] Although the contract lists the name of the contractor as "Social Services Missouri Dept" (R4, tab 1 at 1), we understand that to be a reference to appellant.

[3] This figure does not include additional direct costs that do not bear overhead or profit.

production hours for the year. For Option Year 2, this arithmetic resulted in a "retail rate" of 23.8053 ($30,457,068.71 ÷ 1,279,423 = 23.8053) (tr. 1/37-39). EDP then multiplied the retail rate for the contract year times the number of production hours per day for each DFAC to come up with a daily unit price for each DFAC (tr. 1/38). For instance, for DFAC 630 in Option Year 2, the daily unit price was $6,046.55 for weekdays and $5,260.97 for weekend days (app. supp. R4, tab 2 at 7). The daily price was invoiced by EDP for each day of operation for each DFAC.

4. On 4 August 2011, the government issued Modification No. P00005, exercising Option Year 2 (R4, tab 26 at 1). On 6 October 2011, the government issued a partial contract termination for convenience, which removed six DFACs (735, 821, 1010, 1268, 1231, and 5073) from the contract (R4, tab 38).

5. The contract includes FAR 52.216-21, REQUIREMENTS (OCT 1995)–ALTERNATE I (APR 1984), providing at paragraph (c) that "the Government shall order from the Contractor all of that activity's requirements for supplies and services specified in the Schedule that are required to be purchased by the Government activity or activities specified in the Schedule that exceed the quantities that the activity may itself furnish within its own capabilities" (R4, tab 1 at 136-37). The contract also incorporates by reference FAR 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (MAY 2004), which provides, at paragraph (g), that:

> If the Contractor and the Contracting Officer fail to agree on the whole amount to be paid because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined by the Contracting Officer as follows, but without duplication of any amounts agreed on under paragraph (f) of this clause:
>
> (1) The contract price for completed supplies or services accepted by the Government (or sold or acquired under subparagraph (b)(9) of this clause) not previously paid for, adjusted for any saving of freight and other charges.
>
> (2) The total of—
>
> > (i) The costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto, but excluding any costs attributable to supplies or

3

services paid or to be paid under subparagraph (g)(1) of this clause;

(ii)  The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subdivision (g)(2)(i) of this clause; and

(iii)  A sum, as profit on subdivision (g)(2)(i) of this clause, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(3) The reasonable costs of settlement of the work terminated, including—

(i)  Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii)  The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii)  Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

Paragraph (l) of FAR 52.249-2 further provides that "[if] the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract." (*Id.* at 133)

6.  On 24 June 2013, following unsuccessful attempts to negotiate a price increase for the remaining contract work, appellant submitted a certified claim for the increased

4

costs of performing the remaining contract work (R4, tab 76).[4] The contracting officer, in a final decision dated 5 December 2013 (misdated 5 December 2012) denied appellant's claim and stated, *inter alia:*

> The remainder of the proposal addresses adjustments to contractual costs after the date of the termination notice. These issues should properly be addressed in a request for equitable adjustment separate and independent of the termination settlement proposal in accordance with FAR Part 49.208.
>
> ....
>
> This determination does not preclude filing a request for equitable adjustment for the continued portion of the contract. Any request for equitable adjustment shall be in the format prescribed in FAR 49.208(a) which may be found in FAR Part 15.408 Table 15-2.

(R4, tab 79 at 1-2) At trial, the contracting officer testified that he had reviewed the request for equitable adjustment contained in appellant's 24 June 2013 claim but had made no determination regarding it (tr. 2/32). He stated that although FAR 49.208 does not require that a request for equitable adjustment be deferred until after agreement is reached on termination costs, it was his right to insist that it be deferred so as to ensure that there was no duplication of costs between an equitable adjustment and a termination settlement (tr. 2/32-34).

7. Appellant timely appealed from the final decision on 28 February 2014.

8. The record in this appeal contains evidence that the reduction in production hours caused by the termination of six facilities increased appellant's cost of performing the remaining work. Its original pricing proposal estimated 1,279,423 production hours for all 18 facilities per year, but after the elimination of six facilities the revised estimate of total production hours per year was 980,682 (tr. 1/46; app. supp. R4, tab 54 at 17). This would indicate that without an upward revision to the "retail rate" for Option Years 2 and 3, appellant would not recover all of its fixed costs. This is because when contract pricing is calculated using the same arithmetic

---

[4] Although entitled "Revised Partial Termination Settlement Proposal," the submission requests a contracting officer's final decision and includes the certification required by the Contract Disputes Act for claims in excess of $100,000 (R4, tab 76 at 7-8).

as used in the original pricing proposal; the fixed costs have not changed but the number of production hours has gone down, increasing the price per hour. The record indicates that the retail rate would have to increase from 23.8053 to 25.2242 for Option Year 2 and from 24.6301 to 26.4137 for Option Year 3 in order for appellant to recover its fixed costs to the extent provided for in its original proposal (tr. 1/46-48; app. supp. R4, tab 3 at 5-8, tab 54 at 17-19). In addition, appellant's expert testified, using a different methodology, that appellant had approximately $717,000 of unrecovered fixed costs in Option Year 2 and $805,054 of unrecovered fixed costs in Option Year 3 (tr. 1/130-33; app. supp. R4, tab 53 at 7).[5]

## DECISION

As indicated by the inclusion of the requirements clause, which provides that "the Government shall order from the Contractor all of that activity's requirements for supplies and services specified in the Schedule that exceed the quantities that the activity may itself furnish within its own capabilities," the contract is of the requirements type, meaning that the government promised not to purchase the contract subject matter from other sources. *See Modern Systems Technology Corp. v. United States*, 979 F.2d 200, 205 (Fed. Cir. 1992). Appellant claims entitlement to an equitable adjustment of the prices of the continued portion of the contract (app. br. at 13). Pursuant to FAR 52.249-2(l), where the government terminates a portion of a requirements contract with the type of termination clause at issue here, the contractor is entitled to an equitable adjustment of the prices of the continued portion of the contract for any increased cost of the remaining or unchanged work incurred as a result of the discontinuance of the terminated work. *See Wackenhut Services, Inc.*, ASBCA No. 55691, 08-1 BCA ¶ 33,831 at 167,436. In *Wackenhut*, the government contracted for base operating support services to be provided at two facilities. The Board found the contractor entitled to an increase in contract prices after the government terminated the work at one of the facilities, because the terminated facility provided a substantial part of the allocation base for the contractor's indirect facility management and administration cost pool, increasing the indirect cost of continuing to perform the work at the remaining facility. *Id.*

Similarly, here, the record is sufficient to establish that the partial termination increased the cost of the remaining work, demonstrating entitlement to an equitable adjustment in contract prices for that work. *See Wackenhut*, 08-1 BCA ¶ 33,831 at 167,436. Appellant showed that its original proposal priced the contract to recover its fixed costs through a retail base rate based on 1,279,423 production hours annually,

---

[5] Because we are to decide entitlement only in this appeal, we make no finding regarding quantum. The evidence cited is relevant to whether appellant has shown any damage resulting from the government's partial termination.

6

and that the reduced production hours following the removal of six facilities left it with unrecovered fixed costs in the absence of an increase in that rate (findings 2, 3, 8). Appellant is entitled to an equitable adjustment of the prices of the portion of the contract continued after 6 October 2011. The amount of the adjustment to which appellant is entitled is not currently before us.

The government does not address FAR 52.249-2(l) or dispute appellant's evidence of harm. Rather, it says that just because the government's requirements did not meet its estimated requirements does not mean that appellant is entitled to an equitable adjustment, and that there are no allegations that the government acted in bad faith or prepared a negligent estimate (gov't br. at 23). But that misses the point. Appellant and the government entered into a different contract than existed after 6 October 2011–one that included 50% more dining facilities and 298,741 more production hours than did the contract after partial termination. Presumably, addressing such a change in the parties' expectations is the purpose of FAR 52.249-2(l). Indeed, we have indicated elsewhere that a partial termination of a requirements contract that includes language similar to FAR 52.249-2(l) *alone* entitles the contractor to an equitable adjustment of the prices of the continued portion of the contract. *See Viktoria Transport GmbH & Co., KG*, ASBCA No. 30371, 88-3 BCA ¶ 20,921 at 105,738 (applying DAR 7-103.21 (OCT 1974) in the context of diversion of requirements to another contractor); *R.G. Robbins, Co.*, ASBCA No. 26521, 82-1 BCA ¶ 15,643 at 77,270 (quoting DAR 7-103.21(i) (OCT 1974), with language substantially identical to FAR 52.249-2(l)).

The contracting officer in his final decision declined to decide appellant's equitable adjustment claim on the basis that FAR 49.208 requires a "separate and independent" request for equitable adjustment after termination costs have been settled (finding 6). At trial he conceded that the FAR did not require a "separate and independent" request for equitable adjustment. Moreover, the government does not advance that argument; accordingly, we consider it abandoned. In any event, appellant's claim to entitlement to a "termination settlement" under FAR 52.249-2(g) is in the alternative to its claim to an adjustment of contract prices (app. br. at 15). In view of our decision finding appellant entitled to an adjustment of contract prices under FAR 52.249-2(l), appellant's alternative claim to relief under FAR 52.249-2(g) is moot, and we need not address it further.

7

## CONCLUSION

For the foregoing reasons, the appeal is sustained as to entitlement, and is remanded to the parties for the prompt negotiation of quantum.

Dated: 15 November 2016

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

LYNDA T. O'SULLIVAN
Administrative Judge
Armed Services Board
of Contract Appeals

8

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59191, Appeal of Missouri Department of Social Services, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals